IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| RANDY ARZABALA,<br>Institutional ID No. 310666,<br><br>Plaintiff,<br><br>v.<br><br>LARRY SCOTT WEEMS, *et al.*,<br><br>Defendants. | § § § § § § § § § § § § | CIVIL ACTION NO. 5:21-CV-268-BQ |

**FINDINGS, CONCLUSIONS, AND**
**RECOMMENDATION AND ORDER OF TRANSFER**

The Honorable James Wesley Hendrix, United States District Judge, transferred this case to the undersigned United States Magistrate Judge by order dated March 7, 2022. ECF No. 14. In accordance with the order's directive, the undersigned conducted preliminary screening as described in 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and determined that pro se Plaintiff Randy Arzabala's claims against Defendants Michael Benson, G. Brian McNeill, Larry Scott Weems, and Christopher Miller,[1] in their individual capacities for excessive use of force and bystander liability, survive preliminary screening. ECF No. 27. Consequently, the Court entered an order requiring Defendants to answer or otherwise plead to Arzabala's claims. *Id.* Defendants timely filed Answers. ECF Nos. 37, 45. As of today's date, all parties have not consented to jurisdiction by the magistrate judge. Upon review of Defendants' Answers, it is the opinion of the undersigned that this matter must be transferred to the district judge for further proceedings.

---

[1] The Court identifies Defendants by the names reflected in their Answers. *See* ECF Nos. 37, 45.

I. **Discussion**

The undersigned previously found that Arzabala's claims for excessive force and bystander liability against Defendants in their individual capacities survive preliminary screening.[2] *See* ECF No. 27, at 17–19. The Court addresses these claims below.

**A. Excessive Force**

Arzabala's use of force claim arises under the Fourth Amendment because he allegedly sustained injuries when Defendants effectuated his arrest.[3] *See* Tr. 17:40–21:35; Am. Compl. 7–9, ECF No. 10; Questionnaire 1–3, ECF No. 21;[4] *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Today we make explicit what [has been] implicit . . . and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard . . . ." (internal quotation marks omitted)); *Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021).

To sufficiently state an excessive force claim, an arrestee must demonstrate that he suffered "(1) an injury, (2) that resulted directly from an officer's use of force, and (3) that the force used was objectively unreasonable." *Aguirre*, 995 F.3d at 406 (internal quotation marks omitted). "The second and third elements collapse into a single objective-reasonableness inquiry, guided by" a non-exclusive list of considerations known as the *Graham* factors. *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (internal citation omitted); *see Bush v. Strain*, 513 F.3d

---

[2] The Court concluded that all of Arzabala's other 42 U.S.C. § 1983 claims failed to state a claim for relief and dismissed them through the same order. *See* ECF Nos. 27, 28.

[3] *See* ECF No. 27, at 17 n.13 (dismissing any post-handcuffing excessive force claim Arzabala raised against Defendants and stating that "the only question before the Court is whether Defendants used excessive force *during* their attempts to apprehend and handcuff Arzabala").

[4] Citations to the transcript reference the Court's audio recording of the *Spears* hearing held August 18, 2022. Page citations to Arzabala's Amended Complaint refer to the electronic page number assigned by the Court's electronic filing system.

492, 501 (5th Cir. 2008) ("The objective reasonableness of the force . . . depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible."). The *Graham* factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Peña*, 879 F.3d at 619 (quoting *Graham*, 490 U.S. at 396).

The authenticated records and camera footage reflect that on September 10, 2020, officers investigating a burglary saw a vehicle in a motel parking lot believed to be tied to the burglary. Wadkins Dashcam I 0:40–:56. Arzabala was driving the vehicle. *See* Am. Compl. 7 ("On Sept. 10, 2020 I was moving a vehicle at the La Quinta Inn . . . ." (cleaned up)). One of the officers allegedly activated his emergency lights and pulled in front of Arzabala, but Arzabala fled in his vehicle. *See id.* (asserting the officer "turn[ed] on yellow and blue lights" and "looked angry [so Arzabala] decided to avoid confronting him," "pull[ed] around him," and drove off"); Wadkins Dashcam I 0:40–:56.

Arzabala led officers on a chase lasting approximately five minutes. Wadkins Dashcam I 0:56–5:00; Wadkins Dashcam II 0:00–1:55; Miller Dashcam I 4:50–5:00; Miller Dashcam II 0:00–5:00; Miller Dashcam III 0:00–:10; *see* Am. Compl. 7 (contending that after "a few minutes" he "pull[ed] over"). Officer Miller forcibly stopped Arzabala's vehicle, but Arzabala then abandoned the vehicle and fled on foot. Miller Dashcam III 0:00–:11; Miller BWC[5] 0:25–:37; Am. Compl. 7. Arzabala asserts he ran about ten steps before Officer Miller allegedly "lift[ed] [Arzabala] off the ground and slam[med] [him] on [his] head and neck" to apprehend him. Am. Compl. 7; Miller BWC 0:35–1:20; Tr. 4:00–5:35.

---

[5] "BWC" stands for body-worn camera.

Arzabala asserts that as a result of Officer Miller's purported action, he lost consciousness "for a second." Am. Compl. 7; Tr. 4:00–5:35. When he awoke, Arzabala claims Officer Weems was kicking him in the head and face, while Officers Miller, McNeil, and Benson were on his back administering blows. Tr. 6:00–11:49, 14:26–:58. Arzabala contends he momentarily lost consciousness a second time due to Officer Weems's alleged kicks. Tr. 12:02–17:35; *see* Am. Compl. 7–9. BWC footage confirms the officers eventually handcuffed Arzabala. *See, e.g.*, Miller BWC 0:35–1:20.

Arzabala maintains that as a result of Defendants' actions, he suffered a severe concussion, two lacerations to his head/face that required glue or staples, swelling in his eyes/face, hairline fractures in his ribs, and nerve damage. Tr. 17:40–21:35; Am. Compl. 7–9. He also alleges he experienced pain in his spine, neck, and ribs, as well as vertigo. Tr. 17:40–21:35; Am. Compl. 7–9.

As noted by the Court in its previous order, video footage refutes many of Arzabala's assertions, including that he lost consciousness during the encounter.[6] *See* ECF No. 27, at 18–19 n.16. However, due to the lack of video "providing a composite view of all Defendants' actions" "from the time Officer Miller physically halted Arzabala's flight on foot until the cuffs were applied," the Court must accept as true his allegations during that time frame. *See id.* Having done so, the Court finds his factual assertions state a claim sufficient to survive preliminary screening, i.e., Fourth Amendment excessive force claims against Defendants Benson, McNeill, Weems, and Miller.

---

[6] Arzabala is heard almost continuously saying things like, "I'm sorry," "Ahh," and "Ow, my ribs." Miller BWC 0:35–1:20.

Defendants apparently wanted to speak with Arzabala because he was driving a vehicle associated with a burglary. Although Arzabala's subsequent actions—fleeing from officers in his vehicle and on foot—escalated the gravity of the circumstances surrounding the incident and the degree of force appropriate under those conditions, Arzabala was, at best, a suspect to a crime. *See, e.g., Molina v. Collin Cnty.*, No. 4:17-CV-00017, 2017 WL 5441833, at *3 (E.D. Tex. Nov. 14, 2017) (concluding the first *Graham* factor favored arrestee, where officers had not witnessed him commit a crime and arrestee was merely a suspect to a crime); *see also Brown v. Lynch*, 524 F. App'x 69, 80 (5th Cir. 2013) (per curiam) (applying *Graham* factors and noting that first factor favored plaintiff, where defendant detained him on "suspicion that he had sold marijuana on some prior date—not a trivial offense, but also not one to put any person in real or immediate danger"). The Court therefore finds that the first *Graham* factor slightly favors Arzabala.

In contrast, the undersigned finds the second and third factors weigh in favor of Defendants at this stage. Arzabala concedes, and the video footage confirms, that he fled in his vehicle, thus placing himself, officers, and the public at risk. Moreover, Arzabala actively fled on foot, justifying some degree of force by Defendants to stop Arzabala's flight. *See, e.g., Orr v. Copeland*, 844 F.3d 484, 493 (5th Cir. 2016) ("When dealing with an uncooperative suspect, police act within the scope of objective reasonableness when they react with measured and ascending responses." (internal quotation marks, brackets, and citation omitted)).

Ultimately, "[h]owever, officers must assess not only the need for force, but also the relationship between the need and the amount of force used." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (internal quotation marks and citation omitted) ("Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" (quoting *Graham*, 490 U.S. at

396)). Because of the fact-intensive nature of the inquiry, the Court cannot conclude at screening, as a matter of law, that the *degree of force* applied by Defendants was reasonable under the circumstances. Arzabala alleges that once he was taken to the ground, Officer Weems kicked him in the head and face while Officers Miller, McNeil, and Benson delivered blows to his back. While the record contains video documenting parts of the encounter, due to its lack of completeness the video reviewed by the Court does not "blatantly contradict" Arzabala's allegations in all respects. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Thus, the Court must accept these assertions as true and Arzabala's excessive force claims survive screening. *See, e.g., Allen v. Burnett*, No. 3:12–cv–4863–O, 2013 WL 2151218, at *4 (N.D. Tex. May 17, 2013) (accepting magistrate judge's recommendation that plaintiff's Fourth Amendment excessive force claim survived screening where plaintiff's "factual allegations, taken as true, reasonably suggest[ed] that [defendants] acted maliciously and sadistically to cause harm"); *Paris v. Dall. Police Dep't*, No. 3:12–CV–0296–G–BH, 2012 WL 2520779, at *6 (N.D. Tex. June 5, 2012) (recommending plaintiff's Fourth Amendment excessive force claims survive screening where plaintiff's allegations that defendants kicked him and forced a flashlight "through his teeth," resulting in a broken wrist, chipped teeth, and head injuries, sufficiently demonstrated for screening purposes that defendants "acted maliciously and sadistically to cause harm"), *R. & R. adopted by* 2012 WL 2513470 (N.D. Tex. Jun. 29, 2012).

### B. Bystander Liability

Arzabala also claims that each Defendant failed to intervene and stop the others' alleged unlawful uses of force. Am. Compl. 7–9; Questionnaire 1–3, 6–7; Tr. 21:36–23:25.

An official's failure to intervene in another's use of excessive force against an arrestee may violate the Constitution and subject the official to § 1983 liability. *Whitley v. Hanna*, 726 F.3d

631, 646 (5th Cir. 2013). To prevail on a bystander liability claim, a plaintiff must establish that an officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (citation omitted).

The Court similarly accepts these allegations as true, as it must at this stage of the proceedings, and concludes his factual assertions state a claim sufficient to survive preliminary screening, i.e., claims for bystander liability against Defendants Benson, McNeill, Weems, and Miller. *See, e.g.*, *Greene v. DeMoss*, No. 3:20-CV-00578, 2020 WL 7755690, at *8–9 (W.D. La. Dec. 11, 2020) (finding defendants were not entitled to qualified immunity on plaintiff's bystander liability claims, where plaintiff alleged that each defendant used unconstitutional force and was therefore "necessarily . . . close enough to [plaintiff] that [each] could have opted to cease harming [plaintiff]," but instead watched the other defendants use force "without intervening"), *R. & R. adopted by* 2020 WL 7755655 (W.D. La. Dec. 29, 2020), *aff'd*, No. 21-30044, 2022 WL 3716201 (5th Cir. Aug. 29, 2022).

## II. Recommendation

Given the timeframe set forth by the district judge in the referral order, it appears prudent to transfer the case back to the district judge for implementation of a scheduling order. Because Defendants have asserted the affirmative defense of qualified immunity, it is the undersigned's **RECOMMENDATION** that the United States District Judge enter a limited scheduling order, requiring Defendants to file a dispositive motion for the purpose of making a preliminary determination on qualified immunity. *See* ECF No. 37, at 2 (raising several defenses, including qualified immunity); ECF No. 45, at 2 (same). Alternatively, the undersigned recommends that a

Rule 16 scheduling order be entered, setting dates certain for pretrial deadlines and filing dispositive motions.

It is therefore **ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred back to the docket of the United States District Judge. This case shall hereinafter be designated as Civil Action Number 5:21-CV-268-H.

### III.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: January 10, 2023.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE