UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

RANDY ARZABALA,
Institutional ID No. 2431930

Plaintiff,

v.

No. 5:21-CV-00268-H

LARRY SCOTT WEEMS, *et al.*,

Defendants.

## OPINION AND ORDER

Defendants Larry Scott Weems and Christopher Miller filed a motion for summary

judgment on the issue of qualified immunity with a brief and appendix in support. Dkt.

Nos. 59, 60, 61. Separately, Defendants Mike Benson and G. Brian McNeill also filed a

motion for summary judgment on the issue of qualified immunity with a brief and appendix

in support. Dkt. Nos. 63, 64, 65. Plaintiff did not file a timely response.[1] As explained

below, the Court finds that Defendants are entitled to qualified immunity and grants their

motions for summary judgment.

### 1.    Background and Plaintiff's claims

Plaintiff Randy Arzabala, a state prisoner proceeding pro se and *in forma pauperis*,

filed this civil-rights complaint under 42 U.S.C. § 1983. He alleges that Defendants Weems,

---

[1] Plaintiff filed two untimely motions for extensions of time to respond. Dkt. No. 70, 72. But he
failed to show good faith or good cause for his lengthy delay in seeking additional time, so the Court
denied the motions. Dkt. No. 73. More recently, Plaintiff filed a motion seeking reconsideration of
the denial of his motions for extension. Dkt. No. 74. Plaintiff attached his proposed reply—more
than nine months late—to his motion for reconsideration. Dkt. No. 74-1. Both groups of
defendants responded in opposition to the motion. Dkt. Nos. 75, 76, 77. Plaintiff has shown no
newly discovered evidence, intervening change in the law, or manifest error in the Court's prior
denials, so his motion to reconsider is denied. In any event, even if the Court considered Plaintiff's
unauthorized, incredibly late reply, it would not alter the analysis or outcome.

Miller, Benson, and McNeill—all law enforcement officers—subjected him to excessive force during his arrest on September 10, 2020. He seeks monetary damages.

Plaintiff's claims are set out in his amended complaint, Dkt. No. 10, his answers to the Magistrate Judge's Questionnaire, Dkt. No. 21, and his sworn testimony at a *Spears*[2] hearing, *see* Dkt. No 24 (cited as Hrg, followed by the timestamp). His complaint stems from the events that happened just before his arrest on September 10, 2020. Dkt. No. 10. He contends that he was moving a vehicle in the parking lot of a motel when a white truck pulled in front of him and turned on yellow and blue lights. *Id.* at 7. He states that he believed the driver of the truck was a construction worker, who appeared to be angry, so he drove away to avoid a confrontation. *Id.* He asserts that the white truck pursued him, but after a few minutes, he saw a white and black police vehicle with activated red and blue lights, so he decided it was safe to pull over, and he did. *Id.*

He claims that he jumped out of his vehicle and "threw [his] hands up to show [he was] surrendering" but Defendant Miller lifted him off the ground and slammed him down, rendering him unconscious, for at least a short time. *Id.*; *Hrg* 6:15. Elsewhere, he admits that he "did run from the vehicle for a short distance. But [he] stopped and surendered, well tryed [all sic]" before the defendant tackled him. Dkt. No. 21 at 1. He claims that when he regained consciousness, he was already handcuffed on the ground, but the defendants continued to kick him and beat him. *Id.* at 2; Dkt. No. 10 at 7. Specifically, he asserts that Defendant Weems kicked him in the head and face after he was handcuffed. Dkt. No. 21

---

[2] *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The purpose of a *Spears* hearing is to provide the plaintiff with an opportunity to clarify, amend, and amplify his pleadings. *Eason v. Holt*, 73 F.3d 600, 602 n.15 (5th Cir. 1996) (citing *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987)). Plaintiff's testimony at the *Spears* hearing supplements his complaint and becomes part of his pleadings. See *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).

at 3. He asserts that the other defendants also continued to beat him and failed to stop

Defendant Weems from kicking him.

As a result of the defendants' use of force, he contends that he suffered fractured ribs,

a severe concussion, and cuts on his face and head that required staples. Dkt. No. 21 at 3.

He alleges that he still suffers permanent nerve and brain damage and post-traumatic stress

from the incident. *Id.* He seeks monetary relief.

## 2. Defendants' Motions

Defendants argue that they are entitled to qualified immunity because they did not

violate Plaintiff's constitutional rights and their actions were reasonable in light of clearly

established law. Dkt. Nos. 59, 60, 63, 64.

In support of their motion, Defendants Weems and Miller offer the following

summary judgment evidence:

    A.    Affidavit of Christopher Miller;
    B.    Affidavit of Larry Scott Weems;
    C.    Declaration of Mike Benson;
    D.    Declaration of G. Brian McNeill;
    E.    Video from Christopher Miller's body worn camera (BWC);
    F.    Seized Drug Analysis Report;
    G.    Case Report No. 20-33658; and
    H.    Government Records Affidavit of Katherine Wilkinson, authenticating E, F, and G, listed above.

Dkt. No. 61.

In support of their motion, Defendants Benson and McNeill offer the following

summary judgment evidence:

    A.    Declaration of G. Brian McNeill;
    B.    South Plains Auto Theft Task Force Reports Concerning Case No. 2020-00000053;
    C.    Lubbock Police Department Case No. 20-33716 Supplement 004 (Weems Report);

  D. Lubbock Police Department Case No. 20-33716 Supplement 007 (Miller Report);

  E. Video file: Christopher Miller BWC

  F. Declaration of Michael Benson; and

  G. University Medical Center Records from Sept. 10, 2020 re: Randy Arzabala.

Dkt. No. 65.

  The summary judgment evidence supports Defendants' version of the facts as follows:

  All four remaining defendants are law enforcement officers. On September 10, 2020, Defendants Miller and Weems were detectives with the Lubbock Police Department's Crime Suppression Unit, and Defendants Benson and McNeill were investigators with the South Plains Auto Theft Taskforce, which is a division of the Lubbock County Criminal District Attorney's Office. *See* Dkt. Nos. 61; 65. That day, the Crime Suppression Unit and the South Plains Auto Theft Taskforce were working together, looking for a maroon Cadillac Escalade that was associated with both the burglary of a local business the night before and an earlier theft of a travel trailer. A member of the Crime Suppression Unit spotted the vehicle in the parking lot of a hotel and called for back-up. Defendants Miller, Weems, McNeill, and Benson responded to assist and staged their vehicles near the hotel. Officers watched as Plaintiff exited the hotel, got into the Escalade, and began to drive away. An on-scene officer, driving in an unmarked police truck, activated its lights and attempted to stop the Escalade, but Plaintiff drove around him and began to flee. Defendants each joined in the pursuit.

  The pursuit went on for about five minutes. Plaintiff drove over a curb, through a field, and into an alley in an apparent attempt to evade the caravan of pursuing officers. Defendant Weems observed that two of the Escalade's tires flattened, but Plaintiff again increased his speed and continued to flee. Dkt. No. 65 at 39. Toward the end of the chase,

4

Plaintiff turned to drive the wrong way down the access road for Interstate 27, driving north into oncoming southbound traffic. Some officers followed him, including Defendants Weems and Miller, while other officers continued the pursuit from a distance, using the northbound access road. Plaintiff left the access road and drove through a caliche pit, behind some buildings, and back toward the access road again. Finally, Defendant Miller caught up to the vehicle and performed a forcible stop maneuver. The Escalade slowed and struck a metal fence post, coming to a stop.

Plaintiff exited the vehicle and began to run away. Defendant Miller ran after him. Miller BWC at 0.00:25. Defendant McNeill, who was driving up on the scene, saw Plaintiff pull something out of his waistband and toss it over a fence as he ran. Dkt. No. 65 at 7. Defendant Weems arrived and used his vehicle to block Plaintiff's path, but Plaintiff pivoted and continued to run, heading back into the roadway. Miller BWC at 0.00:34. Defendant Miller caught up to him and tackled him to the ground. *Id.* at 0.00:38. Plaintiff tried to sit up, and Defendant Miller forced him down onto his stomach and struggled to gain control of Plaintiff's arms. *Id.* at 0.00:39–42. Defendants Weems, Benson, and McNeill quickly arrived and surrounded Plaintiff.

Defendants Miller and Benson grabbed Plaintiff's left arm, as Plaintiff rolled onto his right side and tucked his right arm under his body. *Id.* at 0.00:42–56. Plaintiff struggled against the officers, twisting and bringing his knee under him as if trying to get up as they shouted at him to give them his other arm. *Id.* Defendant Miller gained control of Plaintiff's legs and held them down while the other officers struggled to secure Plaintiff's arms. *See id.*; Dkt. No. 61 at 5. Defendant Benson secured Plaintiff's left arm and held it as Plaintiff resisted and Defendant McNeill attempted to secure Plaintiff's right arm. Miller

5

BWC at 0.00:58. While Plaintiff was struggling, Defendant Weems nudged Plaintiff in the side a few times with his tennis shoe, then walked around and kicked Plaintiff on the top of his head. *Id.* at 0.00:55–0.01:01. Defendant Weems explains that "[t]hese kicks were very light and were merely an attempt to distract [Plaintiff] from the other officers and get him handcuffed. The kicks were not punitive in nature." Dkt. No. 61 at 10. Plaintiff brought his right arm up toward his head, presumably to block Defendant Weems's kicks, and Defendant McNeill was able to gain control of it. Miller BWC at 0.01:01–1:16. Defendant Weems held one foot on top of Plaintiff's head for about 3 seconds while the other officers finished placing the handcuffs on the plaintiff. *Id.* at 0.01:14–16. The defendants successfully cuffed Plaintiff about 40 seconds after Defendant Miller first tackled him to the ground. *Id.* at 0.01:17. As soon as the handcuffs locked in place, the defendants all stepped back from Plaintiff, and Defendant McNeill asked the group, "what did he throw at the fence?" *Id.* The defendants asked another on-scene officer to keep an eye on Plaintiff, and they began looking for the discarded item. *Id.* Officers later found a baggie of methamphetamine inside the fenced area and a syringe with methamphetamines in Plaintiff's pocket. *See* Miller BWC at 1:10; Dkt. No. 61 at 30; Dkt. No. 65 at 8, 45.

Defendants argue that they are entitled to summary judgment because the summary judgment evidence shows that (1) Defendant Miller's use of force in tackling Plaintiff was not excessive, (2) Defendants Benson and McNeill's use of force in pushing, pulling, etc. was not excessive, (3) Defendant Weems's use of force in kicking Plaintiff during the struggle was not excessive, (4) Defendants Benson, McNeill, and Miller did not violate Plaintiff's rights in failing to stop Defendant Weems from kicking Plaintiff, and (5) even if the Court finds a genuine issue of material fact about one of Plaintiff's constitutional claims,

6

Defendants Miller, Weems, Benson, and McNeill are entitled to qualified immunity because Plaintiff has failed to show that their actions were unreasonable in light of clearly established law.

## 3.    Legal Standards

### A.    Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, courts must not make credibility determinations or weigh evidence but must instead draw all reasonable inferences in favor of the non-moving party. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002). That said, summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015). And the Court need not accept the plaintiff's version of the facts where the record evidence clearly contradicts those allegations. *Waddleton v. Rodriguez*, 750 F. App'x 248, 253–54 (5th Cir. 2018) (citing *Scott v. Harris*, 550 U.S. 372, 378–79 (2007)).

When the non-moving party fails to file a timely response to a proper motion for summary judgment, he cannot satisfy his burden to "designate specific facts showing that there is a genuine issue for trial," and summary judgment must be granted. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656–57 (5th Cir. 1996). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)

7

(quoting *Skotak v. Tenneco Resins,* 953 F.2d 909, 915 n.7 (5th Cir. 1992)). Although a court may not enter a "default" summary judgment when the non-moving party fails to respond to a motion for summary judgment, the non-moving party is relegated to his unsworn pleadings, which do not constitute summary judgment evidence, and the court may accept the moving party's evidence as undisputed. *Eversley v. MBank Dallas,* 843 F.2d 172, 174 (5th Cir. 1988); *Bookman v. Shubzda,* 945 F. Supp. 999, 1002 (N.D. Tex. 1996). To the extent, however, that a prisoner-plaintiff's allegations are verified under penalty of perjury, they "are deemed competent summary judgment evidence." *Al-Raid v. Ingle,* 69 F.3d 28, 32 (5th Cir. 1995).

## B. Qualified Immunity

Section 1983 "provides a claim against anyone who 'under color of any ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna,* 726 F.3d 631, 638 (5th Cir. 2013). "A plaintiff makes out a [Section] 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko,* 920 F.3d 288, 293–94 (5th Cir. 2019) (quoting *Brown v. Miller,* 519 F.3d 23, 236 (5th Cir. 2008)).

But even if a defendant can be shown to have violated another's constitutional rights, the defendant may not be liable under Section 1983. Defendants who perform discretionary duties—such as police officers and jailers—may invoke the affirmative defense of qualified immunity in response to a plaintiff's Section 1983 suit. Qualified immunity applies "when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly,* 580 U.S. 73, 78–79 (2017) (quoting *Mullenix v. Luna,* 577 U.S. 7, 11 (2015)).

8

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276–80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be sure that, if the facts alleged by plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d 1209, 1212 (5th Cir. 1989). Even if defendants are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. *Cass v. City of Abilene*, 814 F.3 721, 730–31 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3 417, 421–22 (5th Cir. 2007); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. The Supreme Court explained long ago that "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341–43 (1986)). And "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352–53 (5th Cir. 1985).

9

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and modifications omitted). "There are two ways to demonstrate clearly established law." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021). In the typical case, the plaintiff "identif[ies] a case or body of relevant case law in which an officer acting under similar circumstances . . . was held to have violated the [Constitution]." *Id.* (quotation marks and citations omitted). This approach "do[es] not require a case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S.731, 741 (2011). In rare cases, however, "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018); *cf. Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) ("Confronted with the particularly egregious facts of this case, any reasonable officer should have realized that [the plaintiff's] conditions of confinement offended the Constitution.").

The Supreme Court has repeatedly instructed lower courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks and citation omitted). Likewise, the Supreme Court has stated that the purpose of the doctrine is to "give[ ] government officials breathing room to make reasonable but mistaken judgments." *Stanton v. Sims*, 571 U.S. 3, 6 (2013). "Accordingly, 'qualified immunity represents the norm,' and courts should deny a defendant immunity only in rare circumstances." *Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)). When a defendant invokes qualified

10

immunity in his answer, the burden shifts to the plaintiff to show that the defense is unavailable. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019).

Defeating an invocation of qualified immunity requires that the plaintiff "point to summary judgment evidence (1) that [the official] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was clearly established at the time." *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (internal quotation marks omitted). So, while the "plaintiff's factual assertions are taken as true to determine whether they are legally sufficient to defeat the defendant's motion for summary judgment," *Baldwin v. Dorsey*, 964 F.3d 320, 325 (5th Cir. 2020), the plaintiff bears a heavy burden in overcoming a defendant's good-faith invocation of qualified immunity. *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016).

Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. *Pauly*, 580 U.S. at 79. That is, the clearly established law on which a plaintiff relies should not be defined at a high level of generality but must be particularized to the facts of the case. *Id.* at 79–80. Thus, failure to identify a case in which an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.*; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

## C. Excessive Use of Force

Claims of excessive use of force during an arrest are governed by the Fourth Amendment's reasonableness standard. *Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019), *no cert.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014)). Under this standard, the

11

"plaintiff must show (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Id.* (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

Courts must consider the totality of the circumstances when evaluating the reasonableness of a use of force. *Garza*, 943 F.3d at 745; *see also Martin v. Seal*, 510 F. App'x 309, 313 (5th Cir. 2013) (holding that the question of whether force used by an officer was reasonable must be evaluated in the context in which the force was deployed); *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996); *Williams v. Bramer*, 180 F.3d 703, 704 (5th Cir. 1999). Courts should not Monday-morning-quarterback an officer's split-second decision. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *see also Hill v. Carroll Cty., Miss.*, 587 F.3d 230, 234 (5th Cir. 2009). Instead, courts should view excessive-force claims "from the perspective of a reasonable officer on the scene" considering only those facts the officers knew at the time. *Garza*, 943 F.3d at 745 (quoting first *Escobar v. Montee*, 895 F.3d 387, 394 (5th Cir. 2018), then citing *Pauly*, 580 U.S. at 77–78). "Further, only the objective reasonableness of force matters for Fourth Amendment purposes—an officer's subjective motivation and intent are irrelevant." *Hill*, 587 F.3d at 234.

The injury must "overcome the *de minimis* requirement" to be cognizable. *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). The courts must consider the relationship between the amount of force allowed by the constitution as compared to the extent of the injury itself. *Id.* (citing *Ikerd v. Blair*, 101 F.3d 430, 434–35 (5th Cir. 1996)).

When evaluating the second element of the claim, a plaintiff does not have to prove that the "excessive force was the sole cause" of the injury or death, nor that such injury or death was foreseeable. *Goode v. Baggett*, 811 F. App'x 227, 231 (5th Cir. Apr. 24, 2020)

12

(citing first *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996), and then *Darden v. City of Fort Worth*, 880 F.3d 722, 728 (5th Cir. 2018)). As a result, pre-existing conditions do not factor into the analysis. *Baggett*, 811 F. App'x at 231. Essentially, the excessive force alleged need only be a "contributory cause" of the injury. *Id.* (quoting *Darden*, 880 F.3d at 728).

Finally, the third element is evaluated by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Baggett*, 811 F. App'x at 231–32 (quoting *Goodman v. Harris Cty.*, 571 F.3d 388, 397 (5th Cir. 2009)). Rather than a mechanical application, courts should balance the following factors: "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. These considerations are broadly known as the *Graham* factors.

**4.   Analysis**

Plaintiff did not timely respond to Defendants' motions for summary judgment. But the allegations in his original complaint and his responses to the Court's questionnaire were declared under penalty of perjury, and his testimony at the *Spears* hearing was given under oath. Thus, the Court considers these pleadings as competent summary judgment evidence. Even so, taking all of Plaintiff's factual allegations as true, the Court finds that no genuine issues of material fact remain to necessitate trial. Plaintiff has not pointed to any evidence in the record to raise a genuine fact issue to negate Defendants' well-pleaded qualified-immunity defense. In short, he has not carried the burden of proving that Defendants' actions were objectively unreasonable in light of clearly established law at the time of the alleged encounter.

13

## A. Video Evidence

The first problem for Plaintiff is that the defendants produced an authenticated video recording of the encounter. *See* Dkt. Nos. 62; 66. And, as noted by the United States Magistrate Judge, the video footage directly contradicts many of Plaintiff's assertions. *See* Dkt. Nos. 27, 48. Specifically, the video footage contradicts Plaintiff's claims that he stopped and surrendered before Defendant Miller tackled him, that he lost consciousness at any time during the use of force, and that the defendants continued using force after he was restrained. *See id.*; Miller BWC. So, the Court does not accept Plaintiff's version of the facts where the record evidence clearly contradicts those allegations. *Waddleton v. Rodriguez*, 750 F. App'x 248, 253–54 (5th Cir. 2018) (citing *Scott v. Harris*, 550 U.S. 372, 378–79 (2007)).

## B. Injury

It is undisputed that Plaintiff suffered some injury as a result of his encounter with the defendants. The parties agree that Plaintiff suffered a small laceration on his right eyebrow, which was closed with medical glue. Otherwise, Defendants contend that Plaintiff's injuries were far more minor than he alleges.

Plaintiff asserts, without any supporting facts or evidence, that he suffered a severe concussion, permanent brain and nerve damage, and fractured ribs as a result of the defendants' force. *See, e.g.*, Dkt. No. 21 at 2. He also claims that he has ongoing pain and limited mobility in his shoulder, neck, and back.

Defendants Benson and McNeill submitted authenticated medical records showing that a CT scan of Plaintiff's head after the incident was negative, with no acute abnormality or injury. Interestingly, Plaintiff submitted a similar medical report—also showing that the

14

CT scan ruled out any significant head injury. *See* Dkt. No. 74-1. Plaintiff also submitted a different medical report showing that an X-ray of his ribs in a follow-up appointment showed no fracture. Still, Plaintiff contends that he suffered broken ribs and permanent damage to his brain and nervous system. Dkt. Nos. 21 at 2; 74 at 13.

The Court does not have to accept Plaintiff's conclusory allegations, offered without any specific factual or evidentiary support. *See Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir. 1995); s*ee also Hemphill,* 805 F.3d at 538 (explaining that summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence"). Even so, for the purpose of their motion, the Defendants Miller and Weems do not dispute that Plaintiff's injury is more than *de minimis. See* Dkt. No. 60 at 7 n.1. Defendants Benson and McNeill argue that Plaintiff's injurers were minor, but likewise focus their arguments on the reasonableness of the force used.

In any event, even if the Court accepts Plaintiff's unsupported conclusions about the extent of his injuries as true, it does not alter the outcome of this case. The degree of injury is relevant to but not dispositive of the excessive-force claim. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (explaining that "[i]njury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts"). Thus, any remaining dispute over the extent of Plaintiff's injuries would not necessitate trial, because the force used by the officers was reasonable in the context of Plaintiff's dangerous flight and active resistance.

## C. Nature of Defendants' force

### i. The force used by Defendants Benson and McNeill was objectively reasonable.

Considering the totality of the circumstances, the force used by Defendants Benson and McNeill was reasonable. The unrefuted summary judgment evidence shows that Plaintiff was driving a vehicle associated with two felony property crimes, including breaking into a local business and stealing motorbikes. These crimes alone were not necessarily violent or dangerous. But when police attempted to stop Plaintiff's vehicle, he fled, leading officers on a pursuit over curbs, through caliche fields, and into oncoming traffic on the access road to the highway. Plaintiff's flight was a new crime, observed firsthand by the officers, and it put himself, the public, and the officers—including Benson and McNeill—in danger. Thus, the first *Graham* factor—the severity of the crime at issue—supports Defendants' position.

Once Plaintiff's vehicle was forcibly stopped, he continued to flee on foot. While he ran, Defendant McNeill observed him throw something over a nearby fence. And after Plaintiff was taken to the ground, he continued to actively resist by trying to get up, turning and wriggling his body, and tucking his right arm under his body. Defendant McNeill also explains that "[b]ecause the Plaintiff was keeping his arms underneath him after he was taken to the ground and moving them around [he] was concerned that [Plaintiff] was concealing a weapon." Dkt. No. 65 at 7. As long as Plaintiff was actively resisting and concealing his arm, it was reasonable for the officers to perceive him as an immediate threat to their safety. As a result, the second and third *Graham* factors also weigh in favor of granting Defendants Benson and McNeill's motion.

16

Defendant Benson pretty quickly secured Plaintiff's left arm and held it—applying pressure while the other defendants struggled to secure Plaintiff's right arm. Throughout most of the struggle, Defendant Benson knelt near Plaintiff's left shoulder with his knee over Plaintiff's head and neck. Defendant Benson explains that "[his] knee was above [Plaintiff's] head, but not touching it. This way if the Plaintiff attempted to get up his head would strike [Benson's] knee. This was necessary because of [Plaintiff's] continued attempts to get up as [Defendants] tried to restrain him." Dkt. No. 65 at 45. Benson applied pressure downward to keep control of Plaintiff's arm and prevent him from getting up. *Id.*

Defendant McNeill pushed on Plaintiff's side and pulled on Plaintiff's right arm as Plaintiff resisted. The only force applied by Defendants Benson and McNeill was in pressing, pushing, or pulling on the Plaintiff's arms and torso in their efforts to handcuff him. Neither of these officers struck Plaintiff in any way during the encounter, nor did they use more force than necessary to complete the arrest. Moreover, like the other defendants, Benson and McNeill immediately stopped all force as soon as Plaintiff's arms were secured in handcuffs.

Given these circumstances, the force used by Defendants Benson and McNeill was objectively reasonable in the context of their attempt to secure a potentially dangerous, recently fleeing, and actively resisting suspect. The *Graham* factors easily support Defendants Benson and McNeill's assertion of qualified immunity.

Moreover, Plaintiff has failed to identify a case in which an officer acting under similar circumstances was held to have violated a plaintiff's rights, so he cannot overcome Defendants Benson and McNeill's qualified immunity defense. To the contrary, the Fifth Circuit has consistently found the type of pressure and force used by Defendants Benson

17

and McNeill to be reasonable in the context of securing an actively resisting suspect. *See Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009); *Hutcheson v. Dallas Cty.*, 994 F.3d 477, 480 (2021).

In short, Plaintiff has failed to demonstrate that either Defendant Benson or Defendant McNeill used excessive force in violation of his clearly established constitutional rights during his arrest.

### ii. The force used by Defendants Miller and Weems was reasonable.

Defendant Miller was the first officer to catch up to Plaintiff as he ran. Miller tackled Plaintiff to stop him as he attempted to evade the quickly surrounding law enforcement vehicles and run into the street. Miller BWC 0.00:34–42. But "it [is] neither clearly excessive nor objectively unreasonable for []officers to give chase and . . . tackle [a suspect] in order to stop him from fleeing." *Griffin v. City of Sugar Land, Texas*, 2019 WL 175098, at *8 (S.D. Tex. Jan. 11, 2019); *see also Nolen v. Minden Police Dep't*, 48 Fed. App'x 481, 2002 WL 31049579, at *2 (5th Cir. Sept. 6, 2002). In other words, Plaintiff's decision to flee and then resist arrest invited the officers' reasonable use of force. *Griffin v. City of Sugarland, Texas*, 787 F. App'x 244, 245 (5th Cir. 2019).

Then, as Plaintiff tried to bring his leg under him to get back up, Defendant Miller pulled Plaintiff's leg and secured it in a folded position. This force, too, was objectively reasonable as Plaintiff was actively resisting the officers' attempts to arrest him. *See Hutcheson*, 994 F.3d at 479–480. Just like Defendants Benson and McNeill, Defendant Miller's force in pressing and pulling to effectuate Plaintiff's arrest was not unreasonable. The *Graham* factors likewise support Defendant Miller's assertion of qualified immunity.

18

Unlike the other defendants, Defendant Weems did strike Plaintiff during the struggle, over the course of about 20 seconds. Miller BWC 0.00:55–1:15. First, he lightly kicked, or nudged Plaintiff's side with his tennis shoe, a few times. *Id.* Then he moved to Plaintiff's head and delivered more light kicks while Plaintiff actively resisted the other officers' efforts to secure his right arm. *Id.* Finally, as the other officers were placing the handcuffs, Defendant Weems held his foot on Plaintiff's head for about 3 seconds. *Id.* at 0.01:15–18. But just as with the other defendants, Weems immediately stepped back and stopped all force as soon as the handcuffs clicked into place. Id. at 0.01:18.

Again, "it [is] neither clearly excessive nor objectively unreasonable for [an] officer[] to punch and kick [a suspect] or . . . to knee [the suspect] and point a gun at him in an effort to make [him] stop resisting and submit to being handcuffed." *Griffin*, 2019 WL 175098, at *8. This is especially true, as here, when the "situation [is] tense and chaotic, and the officers could reasonably . . . fear[] for their safety." *Id.* Moreover, the Court considers that the situation rapidly evolved from surveillance on a vehicle associated with a property crime to a pursuit on and off-road (and for a time, the wrong way on a one-way road), to a physical struggle with a suspect who was both actively resisting and attempting to flee.

Weems did not know whether Plaintiff was armed, and he acted in an effort to distract the plaintiff so that the other officers could safely complete the arrest. Weems's brief use of force—kicking—was "the sort of 'split-second judgment' in a difficult situation that qualified immunity is designed to protect." *Griggs v. Brewer*, 841 F.3d 308, 316 (5th Cir. 2016) (citing *Graham*, 490 U.S. at 396–97). Additionally, the summary judgment evidence does not indicate that Weems's kicks were malicious, especially because he ceased all force as soon as the goal—arrest—was accomplished and Plaintiff stopped resisting.

19

In sum, the force used by Defendants Miller and Weems was reasonable in the context of securing a fleeing, potentially dangerous, and actively resisting suspect. Plaintiff has not demonstrated that Defendant Miller or Defendant Weems violated his clearly established constitutional rights; thus, these defendants are entitled to qualified immunity.

## D.    Bystander Liability

Plaintiff also asserts that each defendant is responsible for failing to intervene and stop the others' alleged excessive force under a theory of bystander liability. In the Fifth Circuit, "an officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citing *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995)). In short, Courts must "consider whether an officer 'acquiesce[d] in" the alleged constitutional violation.'" *Id.* at 647.

A bystander-liability claim stemming from the use of excessive force turns on whether the bystander has "a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it." *Hale*, 45 F.3d at 919. Mere presence at the scene of alleged use of excessive force, however, does not give rise to bystander liability. *See Whitley*, 726 F.3d at 646–47; *Vasquez v. Chacon*, No. 3:08-CV-2046-M, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009) (citing *Nowell v. Acadian Ambulance Serv.*, 147 F. Supp. 2d 495, 507 (W.D. La. 2001), *aff'd* 390 F. App'x. 305, 2010 WL 3023273 (5th Cir. 2010)). Making this determination involves consideration of both the duration of the alleged use of force and the location of the detainee relative to the bystanders. *See generally Vasque*z, 2009 WL 2169017, at *6.

20

Because the Court already found that none of the defendants violated Plaintiff's constitutional rights during their brief struggle to arrest him, the bystander-liability analysis is simple. Plaintiff has not demonstrated the first required element—that any of the defendants realized that the force used by another officer was excessive—because the Court has found the force used by each other officer to be reasonable under the circumstances. This alone defeats Plaintiff's bystander-liability claim. But even if any of the officers did use excessive force during the encounter, Plaintiff has also failed to show the other required elements as to any of the defendants.

As described above, the scene of the struggle was tense and chaotic. First, none of the other defendants had a reasonable opportunity to stop Defendant Miller from tackling Plaintiff, because they had not reached Plaintiff yet. Moreover, during the scuffle, each officer was focused on Plaintiff and their own efforts to complete his arrest. As long as Plaintiff was actively resisting, none of the officers had a reasonable opportunity to stop and analyze the actions of any of the other officers. And, as shown in the video footage, at least two of the other defendants had their backs to Defendant Weems when he kicked Plaintiff, and none of the defendants were looking in his direction at any point. *See* Miller BWC 0.00:40–0.01:18.

There is no evidence in the record to suggest that any defendant saw another officer's misconduct and chose not to act. To the contrary, the video evidence and the verified statements of the defendants indicate that each defendant was reacting only to Plaintiff's resistance and attempts to evade arrest. And the whole situation was brief, but intense. The force lasted only 40 seconds—the same amount of time that Plaintiff was actively resisting. Thus, the brevity of the use of force also weighs against any finding of bystander liability.

21

In short, Plaintiff has failed to show that any defendant used excessive force or that any defendant had a reasonable opportunity to realize that another officer was using excessive force and acquiesce to it. Plaintiff has failed to overcome the defendants' assertions of qualified immunity, and the defendants are entitled to summary judgment on Plaintiff's bystander-liability claims.

**5.   Conclusion**

Defendants have asserted in good faith the defense of qualified immunity, and Plaintiff has failed to point to any evidence in the record to show that their actions violated his constitutional rights or that they were unreasonable in light of clearly established law. Because the video evidence blatantly contradicts most of Plaintiff's version of events, there remains no genuine dispute over the facts material to Defendants' motions.

For these reasons, the Court finds that Defendants' motion for summary judgment should be granted, that Plaintiff take nothing on his claims against Defendants, and that all remaining claims should be dismissed with prejudice.

All relief not expressly granted is denied, and any other pending motions are denied. The Court will enter judgment accordingly.

Dated March 𝟠, 2024.

JAMES WESLEY HENDRIX
United States District Judge

22